Filed 5/7/14  P. v. Killebrew CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F066871 |
| Plaintiff and Respondent, | (Super. Ct. No. BF145238A) |
| v. | **OPINION** |
| LLOYD GLENN KILLEBREW, | |
| Defendant and Appellant. | |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

John Hardesty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P.J., Gomes, J., and Poochigian, J.

## INTRODUCTION

On December 11, 2012, an information was filed against appellant, Lloyd Glenn Killebrew, charging him with felony burglary of an inhabited dwelling house (Pen. Code, § 460, subd. (a), count 1),[1] corporal injury of the mother of his child, Patricia Pollard (§ 273.5, subd. (a), count 2), using force or violence to inflict great bodily injury (§ 243, subd. (d), count 3), felony threat of death or great bodily harm (§ 422, count 4), felony attempt to deter an executive officer from the performance of his or her duty (§ 69, count 5), and dissuading a witness by force or threat (§ 136.1, subd. (c)(1), count 6). The information further alleged one prior serious felony conviction within the meaning of the three strikes law (§§ 667, subds. (c)-(j) & 1170.12, subds. (a)-(e)), a five-year enhancement for a prior serious felony conviction (§ 667, subd. (a)), six prior prison term enhancements (§ 667.5, subd. (b)), and a great bodily injury enhancement (§ 1022.7, subd. (a)). At his arraignment on December 17, 2012, appellant denied the allegations.

The jury trial commenced on February 5, 2013. On February 8, 2013, the jury found appellant not guilty of count 1, burglary, and count 5, deterring an executive officer. The jury convicted appellant of the remaining allegations and found true the great bodily injury allegation. In a bifurcated bench trial, the court found true the remaining special allegations and enhancements.

On March 12, 2013, the trial court sentenced appellant to the upper term of four years on count 2, doubled pursuant to the three strikes law to eight years. The court imposed consecutive terms of five years for the great bodily injury enhancement and the prior serious felony conviction enhancement. The court imposed a consecutive term of two years on count six. The court imposed five consecutive terms of one year for five prior prison term enhancements. The court stayed appellant's sentence on the remaining

---

[1]     Unless otherwise indicated, all statutory references are to the Penal Code.

counts pursuant to section 654. Appellant's total prison term was set at 25 years. Appellant was granted custody credits of 115 days for actual time in custody, 17 days for conduct credits, and total custody credits of 132 days.

Appellant contends the trial court erred in permitting testimony from the victim concerning past incidents of domestic violence. We find no error and affirm the judgment.

## FACTS

### *Trial Testimony and Recorded Conversations*

On the evening of November 18, 2012, appellant knocked on the door of Patricia Pollard's sister's apartment. Pollard was inside with her adult daughter, Kamesha Killebrew, and other family members. Kamesha let appellant inside. While asking Kamesha where he could find Pollard, appellant looked through rooms searching for her. Pollard was in the bathroom.

Pollard testified she did not see Kamesha open the door, but heard appellant's voice in the apartment. Pollard said she heard a knock on the bathroom door some seconds after she heard appellant's voice. Appellant opened the door, entered the bathroom, and closed the door behind him. Pollard stated that she did not recall arguing with appellant and he did not hit her. Pollard denied telling a police officer about the argument and the hitting. Pollard admitted she suffered an injury that evening that resulted in her knocking out a front tooth and requiring treatment, including dental work and stitches to her lip. Pollard explained that she injured herself "from going down and bumping the counter." The evening of the incident, Pollard told the responding police officer that she was hiding from appellant in the restroom and appellant hit her in the mouth.

Kamesha testified she saw blood on her mother's face 15 or 20 minutes after appellant entered the bathroom. Sometime that evening, Kamesha called 911. Kamesha

3

could not remember if she retrieved a knife, confronted appellant, or told him to leave. Kamesha could not remember other details of what happened that evening.

Bakersfield Police Officer David Hamma responded to the domestic disturbance call and met Kamesha in an alley just north of the apartment. Kamesha's conversation with Hamma was recorded and played for the jury as a prior inconsistent statement. During that conversation, Kamesha explained to Hamma that she heard her father banging on the bathroom door and then heard arguing coming from inside the bathroom. Kamesha opened the door and saw her mother's mouth bleeding and missing a front tooth. Appellant stood there looking. Kamesha went to the kitchen, grabbed a knife, and stood between them. Kamesha told appellant to leave and said she was about to call the police.

When appellant did not move, Kamesha exited the apartment and called the police. As Kamesha was talking to Officer Hamma outside the apartment, she told him that appellant had threatened to kill her. Kamesha explained she was going back to the apartment to get her children and her niece. Kamesha said appellant was angry because she had called the police. Appellant told Kamesha he was going to kill her and that she was dead.

Officer Hamma then responded to the apartment. While Hamma talked to Pollard, she removed a tooth from her mouth. Pollard did not appear to Hamma to be under the influence of alcohol. Officer Hamma photographed Pollard and the scene. One photograph depicted blood on a bathmat. There were photographs of Pollard's tooth inside and outside of its socket. Hamma arrested appellant and transported him to jail. The jury was also shown photographs taken of appellant's knuckles.

A recording of telephone conversations between appellant and Pollard while appellant was incarcerated in jail were played for the jury and were admitted as prior inconsistent statements to Pollard's trial testimony. Appellant asked Pollard why she set

4

him up with a million dollar bail. When appellant asked Pollard why she told authorities that he hit her, she replied, "Well didn't you?" After appellant repeated the question, Pollard told appellant that she told investigators he hit her because he did.

Appellant described the case against him as "bullshit" and "motherf**king bullshit." Pollard told appellant that she lost her tooth and needed stitches in her lip. Appellant told Pollard that he was "going to pay for all this shit," but could pay for nothing in jail.

Appellant complained to Pollard that he had many charges. Pollard replied that she heard what appellant said and he was talking like she had something to do with the charges against him. Appellant responded, "You do!" Pollard replied with, "No," to appellant's response. Later, appellant asked Pollard why she told the police that he hit her, again Pollard replied that it was because he did.

Appellant asked Pollard, "why in the f**k" was he in jail. Pollard replied because she lost a tooth and required stitches. Appellant asked Pollard how could he "pay for it" while he was in jail. Pollard responded that it should never have happened. Appellant complained that he faced a sentence of 40 or 50 years and commented that Pollard was cool with that. Pollard said she was cool with it in the beginning and that was "why [appellant] got away with so much." Pollard elaborated that appellant could not be "tripping" like he was around Pollard's children and around her sister.

Appellant again said he did not understand why Pollard did what she did and accused Pollard of wanting him to suffer. Pollard said she did not want appellant to suffer. Appellant replied that was what she was doing and Pollard "gave these motherf**kers ammunition to f**k me." Pollard pointed out that appellant did this to himself. Pollard then said that she did not want to see appellant locked up and asked appellant what could be done about it now. Appellant responded that Pollard should "[g]o deal with it."

Pollard told appellant that she was just sitting in the restroom, using the toilet, and did not have time to buckle her clothes before appellant opened the door and started hitting her. Appellant admitted he "was wrong," he was "hell wrong man."

Appellant then started complaining again about Kamesha and the allegations against him. He was particularly upset at the allegation that he intimidated a witness and said, "[t]hey got your motherf**king daughter with their bullshit." Pollard told appellant that Kamesha was afraid of him and was scared to come home. Pollard asked appellant about his threat to kill Kamesha. Appellant denied making that statement. Pollard told appellant he did threaten Kamesha. Appellant replied, "She's got to be f**ked up." Appellant told Pollard that she had to get him out of this situation.

### Evidence of Prior Domestic Violence

Appellant made an in limine motion to preclude evidence of his prior instances of domestic violence under Evidence Code section 1109. Appellant challenged the prior acts on the grounds that they were uncorroborated, remote in time, and unduly prejudicial. At the in limine hearing, defense counsel further argued that the prosecution had not complied with the 30-day notice requirement of Evidence Code section 1109 in order to produce past incidences of domestic violence.

The trial court asked the prosecutor if he would be introducing the prior domestic violence episodes as evidence of Pollard's state of mind and not pursuant to Evidence Code section 1109. The prosecutor replied affirmatively and also noted they were relevant to the burglary allegation concerning appellant's intent when he entered the residence. The court found the incidences of prior domestic violence were not being admitted pursuant to Evidence Code section 1109, but as circumstantial evidence of appellant's state of mind on the burglary allegation and for the victim's state of mind, her credibility, and the jury's understanding of the victim's position as she testified. The court ordered that the prosecution could not argue any prior domestic violence incidences

6

to show the appellant's propensity to so act pursuant to Evidence Code section 1109, but only to show state of mind.

The jury heard a recording of Officer Hamma's questioning of Pollard on the evening of the incident. Pollard told Hamma that there was a prior incident of domestic violence by appellant on her that was reported. Pollard said it was "years ago."

## ADMISSION OF PRIOR DOMESTIC VIOLENCE

Appellant contends that the trial court erred in admitting the tape in which Pollard mentioned a prior act of domestic violence. Appellant argues that the trial court failed to consider the prejudice of the statement under Evidence Code section 352 and to consider it as inadmissible hearsay pursuant to Evidence Code sections 1250 and 1252. Appellant further argues that admission of this statement violated his Fourteenth Amendment due process rights and his trial counsel was ineffective for failing to request a limiting instruction as to how the jury could consider the evidence. We reject these contentions and affirm the judgment.

Respondent does not argue that Pollard's challenged statement was admissible to show her state of mind during the attack or appellant's intent upon entering the residence with regard to the burglary count. Rather, the People concede that defense counsel did not request a specific limiting instruction concerning the statement and the issue is waived for appellate review.[2] Because appellant has also raised the issue of ineffective assistance of trial counsel for failing to seek a limiting instruction to the jury, we do not reject this issue on a theory of forfeiture or waiver.

We agree with the People, however, that the statement was admissible to explain Pollard's conduct on the night of the incident in light of her inconsistent testimony at

---

[2]    The trial court did instruct the jury with CALCRIM No. 303, which states in relevant part: "[C]ertain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other."

trial. We further agree with the People's argument that any error in the admission of this testimony or in the failure to give a limiting instruction to the jury was harmless.

Evidence that a witness is afraid to testify or fears retaliation for doing so is relevant to the credibility of that witness and is admissible. An explanation of the basis for the witness's fear is also relevant on the question of his or her credibility and is well in the discretion of the trial court to admit. There is no requirement to show threats against the witness were personally made by the defendant or the witness's fear of retaliation is directly linked to the defendant. (*People v. McKinnon* (2011) 52 Cal.4th 610, 668.)

We agree with the People that Pollard's recorded statement to Officer Hamma on the evening of the incident was admissible to show her fear of appellant, as well as her inconsistent trial testimony in which she denied being hit by appellant and claimed not to remember what happened that evening. If the trial court did not make its ruling based on this theory, it does not matter for purposes of appellate review. Appellate courts normally affirm a judgment that reaches a correct result, whether or not the trial court's reasoning was correct. (*People v. Geier* (2007) 41 Cal.4th 555, 582; *People v. Zapien* (1993) 4 Cal.4th 929, 976.) We review judicial action on appeal, not the trial court's legal reasoning for a ruling. (*People v. Franklin* (2003) 105 Cal.App.4th 532, 535.) We find no error in the trial court's admission of Pollard's statement concerning a prior domestic violence incident involving appellant.

Furthermore, we do not find the admission of this statement prejudicial under the facts of this case. The statement was not nearly as inculpatory as statements made the night of the incident by Kamesha, as well as Pollard's recorded statement to Officer Hamma that appellant hit her that evening. The prosecution's case was complicated by the fact that at trial both Kamesha and Pollard either denied the allegations against appellant or claimed not to remember what happened. Even so, the recorded statements

8

of both witnesses the evening of the incident were consistent and detailed accounts of appellant's conduct. The prosecutor also played tapes of telephone conversations between appellant and Pollard from jail indicating appellant's culpability.

Key parts of this evidence were also corroborated by Officer Hamma's testimony and photographs taken of appellant's knuckles and Pollard's injuries. Even if we were to find error in the trial court's admission of Pollard's statement concerning a prior incident, as well as its failure to give a specific limiting instruction, the error would be harmless. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Finally, we reject appellant's argument that his trial counsel was ineffective for failing to request a limiting instruction on the challenged statement.[3] As noted above, we do not find there any legal error. Trial counsel, therefore, was not ineffective for failing to request a limiting instruction. Also, the challenged statement was a very limited comment. Trial counsel could legitimately have had a sound trial tactic in not requesting a further limiting instruction so it would not be emphasized to the jury.

---

[3] Appellant's challenges can be construed to be a challenge to the effectiveness of his trial counsel. The defendant has the burden of proving ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of trial counsel, the defendant must establish not only deficient performance, which is performance below an objective standard of reasonableness, but also prejudice. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Tactical errors are generally not deemed reversible. Counsel's decisionmaking is evaluated in the context of the available facts. To the extent the record fails to disclose why counsel acted or failed to act in the manner challenged, appellate courts will affirm the judgment unless counsel was asked for an explanation and failed to provide one, or, unless there simply could be no satisfactory explanation. Prejudice must be affirmatively proved. The record must affirmatively demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Maury* (2003) 30 Cal.4th 342, 389.) Attorneys are not expected to engage in tactics or to file motions that are futile. (*Id*. at p. 390; also see *People v. Mendoza* (2000) 24 Cal.4th 130, 166.)

9

## DISPOSITION

The judgment is affirmed.